**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
MARITZA RIOS,

                   Plaintiff,

          -against-

TOWN OF HUNTINGTON HOUSING
AUTHORITY, SIELE A. BOYONE, in her
capacity as Executive Director of Town of
Huntington Housing Authority, and SUSAN
ORTEGA, in her capacity as Deputy Director of
the Town of Huntington Housing Authority,

                   Defendants.
---------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
12-cv-1558 (ADS)(WDW)

<u>**APPEARANCES:**</u>

**Nassau/Suffolk Law Services Committee, Inc.**
*Attorneys for the Plaintiff*
1757 Veterans Highway, Suite 50
Islandia, NY 11749
      By: Victor J. Ambrose, Esq., Of Counsel

**Vitale and Levitt, P.C.**
*Attorneys for the Defendants*
445 BroadHollow Road, Suite 124
Melville, New York 11747
      By:  Paul Levitt, Esq., Of Counsel

**SPATT, District Judge**.

      Presently before the Court is the Plaintiff's motion for a preliminary injunction to stay the

Defendants from terminating her from the Section 8 Housing Choice Voucher Program.  For the

reasons stated below, the Court finds that this case should be brought as an Article 78 proceeding

under New York State Law and consequently denies the Plaintiff's motion for a preliminary

injunction.  However, because of the drastic nature of the relief sought by the Defendants,

coupled with the fact that the Plaintiff is a mother of three small children and, apparently, has no

1

funds, the Court will extend the TRO for the stipulated period, until April 17, 2012, to enable the Plaintiff's counsel to seek comparable relief in the state court.

## I. BACKGROUND

The Plaintiff, Maritza Rios ("Rios" or "the Plaintiff") is a participant in the Section 8 Housing Choice Voucher Program.  <u>See</u> Section 8 Housing Assistance Payments Program of the United States Housing Act of 1937, as amended by the Housing and Community Development Act of 1974, codified at 42 U.S.C. § 1437(f) ("Section 8").  The Defendant the Town of Huntington Housing Authority is categorized as a public housing authority ("PHA") under the United States Department of Housing and Urban Development ("HUD") regulations.  This PHA is the municipal entity that monitors and administers the Section 8 program in the Town of Huntington ("the Town").  This program is administered to approximately 475 Section 8 families in the Town.  The Defendant Siela A. Bynoe is the Executive Director of the PHA, and the Defendant Susan Ortega is the Deputy Director of the PHA.

On August 20, 2011, the Plaintiff was involved in a physical altercation with two other women.  According to the Plaintiff, the females were unknown to her, intoxicated and physically attacked her first.  Thus, she says she only responded in kind by physically defending herself.

On August 26, 2011, the Plaintiff learned that the police were looking for her and so she turned herself into the police authorities.  As a result, she was arrested and charged with felony assault.  As an impoverished person, Rios could not make the modest bail and was incarcerated from August 26, 2011 through October 13, 2011, during which time her mother cared for her three young children, who were aged seven, two, and one.  However, by October 13, 2011, Rios' mother could no longer care for her children.  On that date, the Plaintiff asserts that because of her incarcerated circumstances, and the need to take care of her three children, she was

compelled to plead guilty to the felony assault charge.  On that same date, the Plaintiff was sentenced to probation for one year, with the understanding that after one year, the charge would be reduced to a misdemeanor.

In the interim, the PHA sent a notice to the Plaintiff dated October 5, 2011, stating that she was to be terminated from the Section 8 Program on account of her arrest.  Appended to the notice was both proof of her criminal charges obtained from the Suffolk County Court records, and a newspaper story about the incident.  According to the terms of the notice, and in accordance with HUD regulations, the Plaintiff availed herself of the opportunity to have an informal hearing to challenge the termination.

On December 9, 2011 a hearing was held before the Defendant PHA's customary informal hearing officer, Adam Morelli ("the HO").  This hearing was not on the record, and in accordance with the Defendants' policy, the Plaintiff and her attorney were forbidden to transcribe or record the proceedings.  However, Rios was afforded an opportunity to be heard; the right to have an attorney present; the right to present evidence; and the right of cross-examination.  The Defendants offered the termination notice and the accompanying documents, but presented no other evidence or witnesses.  The Plaintiff testified to the facts of the altercation; the circumstances surrounding her guilty plea because of her three young children; the fact that she had no criminal history; as well as her financial situation, in that in the absence of a Section 8 voucher, she and her children would be homeless.  The Plaintiff also submitted six letters from school authorities and community agency workers attesting to her good character.

On January 2, 2012, the HO issued a written decision, in which he determined that Rios could continue to receive her Section 8 benefits.  The HO wrote, in part, that:

> According to §982.553(c)(2)(ii)(A), "[t]he PHA *may* prohibit admission of a household to the program if the PHA determines that any household member is

3

currently engaged in, or has engaged during a reasonable time before the admission: (2) violent criminal activity." In this case, I do not believe your Section 8 benefits should be terminated at this time.

Neither party disputes that the HO did not refer to the correct HUD regulation, in that the hearing involved termination of Section 8 benefits, not the initial admission into the Section 8 program. However, the parties dispute whether this is a mistake in form or substance. The HO's written decision went on to state that:

> As determined by a review of documents and testimony given during the hearing, the altercation which led to your arrest was not initiated by you. In fact, you were attacked by two intoxicated women and reacted in self defense. This was your first legal infraction, and under the circumstances, I believe that you should not be punished further for this incident. Additionally, it is clear that you are in high esteem within you community, as exemplified by the numerous letters written on your behalf by Principal's, coaches, and teachers.

In the end, the HO warned that if Rios' probation was violated by any further legal infractions, her benefits would be terminated.

The Defendants continued to pay the Plaintiff's Section 8 rental subsidy for January and February 2012. On February 8, 2012, a meeting was held by the PHA and its Board of Commissioners. Thereafter, on February 23, 2012, the Defendants sent the Plaintiff a notice stating that they were not bound by the HO's decision and were going to proceed to terminate her Section 8 Benefits. The PHA stated four reasons for its determination that it was not bound by the HO's report: (1) the HO applied the wrong federal regulation in reaching his decision, in that he applied the regulation relating to the admission of benefits, not to the termination; (2) the HO failed to properly apply the standards for review of evidence of criminal activity as stated by 24 C.F.R. §982.553, and that the criminal charges "are considered violent criminal activity"; (3) the HO incorrectly applied the federal, state, and local laws with respect to termination of a participant in the Housing Choice Voucher Program who engages in violent criminal activity

4

because the HO improperly considered factors and circumstances that were not relevant; and (4) the HO wrongly applied certain mitigating circumstances concerning the penalty to be imposed.

On March 30, 2012, the Plaintiff commenced the present lawsuit alleging six causes of action, four of which are premised on violations of the Plaintiff's due process rights under the Fourteenth Amendment.  In addition the Plaintiff brings one claim for relief pursuant to 42 U.S.C. § 1983 ("Section 1983"), alleging that the Defendants acted under color of state law in depriving her of her rights under the Fourteenth Amendment, 42 U.S.C. §§ 1437(f) and 1437d(k).  The Plaintiff filed an application for a temporary restraining order and a preliminary injunction, along with her summons and complaint.

On March 30, 2012, this Court granted the Plaintiff's application for a temporary restraining order.  Thereafter, on April 4, 2012, this Court held a hearing, on the preliminary jurisdictional question as to whether this Court should exercise jurisdiction or if the case is more properly brought as an Article 78 proceeding in the state court.  By consent, the temporary restraining order was extended subject to the determination of this Memorandum of Decision and Order.

## II.  DISCUSSION

### A.  As to Termination from Section 8 Housing and the Applicable HUD Regulations

There is no question that under the federal HUD regulations, the PHA may terminate Section 8 assistance for criminal activity by a household member if the PHA determines, based on a preponderance of the evidence, that the household member has engaged in the activity, regardless of whether the household member has been arrested or convicted for such activity.  24 C.F.R § 982.553(c).  Such criminal activity may be drug-related, violent, or any other criminal activity which may threaten the healthy, safety, or right to peaceful enjoyment of the premises by

5

other residents or persons residing in the immediate vicinity.  24 C.F.R. § 982.551.  In

determining, in its discretion, whether to deny or terminate assistance, the PHA may consider all

the relevant circumstances such as the seriousness of the case; the extent of participation or

culpability; mitigating circumstances related to the disability of a family member; and the effects

of denial of assistance on the family members who were not involved.  24 C.F.R § 982.552(c)(2).

     As for the proper procedure for termination, the United States Housing Act, 42 U.S.C

§ 1437d(k), states:

> The Secretary [of HUD] shall by regulation require each [PHA] receiving
> assistance under this chapter to establish and implement an administrative
> grievance procedure under which tenants will—
> (1) be advised of the specific grounds of any proposed adverse public housing
> agency action;
> (2) have an opportunity for a hearing before an impartial party upon timely
> request . . .
> (3) have an opportunity to examine any documents or records or regulations
> related to the proposed action;
> (4) be entitled to be represented by another person of their choice at any hearing;
> (5) be entitled to ask questions of witnesses and have others make statements on
> their behalf; and
> (6) be entitled to receive a written decision by the public housing agency on the
> proposed action.

42 U.S.C. § 1437d(k).  In turn, the federal HUD regulations elaborate with regard to the proper

hearing procedures, stating that:

> (4) Hearing officer: Appointment and authority.
>
> (i) The hearing may be conducted by any person or persons designated by the
> PHA, other than a person who made or approved the decision under review or a
> subordinate of this person.
>
> (ii) The person who conducts the hearing may regulate the conduct of the hearing
> in accordance with the PHA hearing procedures.
>
> (5) Evidence. The PHA and the family must be given the opportunity to present
> evidence, and may question any witnesses.  Evidence may be considered without
> regard to admissibility under the rules of evidence applicable to judicial
> proceedings.

> (6) Issuance of decision. The person who conducts the hearing must issue a written decision, stating briefly the reasons for the decision.   Factual determinations relating to the individual circumstances of the family shall be based on a preponderance of the evidence presented at the hearing.   A copy of the hearing decision shall be furnished promptly to the family.

24 C.F.R § 982.555(e).

Once the HO issues a decision, the PHA is not bound by that determination if it: (1) concerns a matter for which the PHA is not required to provide an opportunity for an informal hearing under this section, or that otherwise exceeds the authority of the person conducting the hearing under PHA hearing procedures, neither of which is applicable in the present case, or (2) is contrary to HUD regulations or requirements, or otherwise contrary to federal, state, or local law.  24 C.F.R. 982.555(f); see Tinnin v. Section 8 Program of City of White Plains, 706 F. Supp. 2d 401, 405 (S.D.N.Y. 2010) ("Section 982.555(f) allows the public housing authorities to ignore hearing decisions that are contrary to HUD regulations or requirements, or otherwise contrary to federal, State, or local law.").  This latter ground formed the basis for the termination of Plaintiff's Section 8 benefits.

**B.  Legal Standard for a Preliminary Injunction**

"In order to justify a preliminary injunction, a movant must demonstrate (1) irreparable harm absent injunctive relief; and (2) 'either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor.'  Metro. Taxicab Bd. of Trade v. City of New York, 615 F.3d 152, 156 (2d Cir. 2010) (quoting Almontaser v. N.Y. Dep't of Educ., 519 F.3d 505, 508 (2d. Cir. 2008)).  Generally, the purpose of a preliminary injunction is to preserve the status of the parties until a determination on the merits of the plaintiffs' claims can be made.  Univ. of Tex. v. Camenisch, 451 U.S. 390, 395, 101 S. Ct. 1830, 1834, 68 L. Ed. 2d 175 (1981).

However, "[w]hen, as here, the moving party seeks a preliminary injunction that will affect government action taken in the public interest pursuant to a statutory or regulatory scheme, the injunction should be granted only if the moving party meets the more rigorous likelihood-of-success standard." Metro. Taxicab, 615 F.3d at 156 (quoting Cnty. of Nassau v. Leavitt, 524 F.3d 408, 414 (2d Cir. 2008)); Lynch v. City of New York, 589 F.3d 94, 98 (2d Cir. 2009).

### C.  As to the Plaintiff's Fourteenth Amendment Due Process Claims and Section 1983 Due Process Claim

The Plaintiff brings four causes of action based upon the Fourteenth Amendment Due Process Clause and one pursuant to Section 1983, based in part upon violations of the Fourteenth Amendment Due Process Clause.  The thrust of the Plaintiff's claims is that she was deprived of her due process rights when the PHA overturned the HO's determination that had sustained her Section 8 benefits because (1) the HO's decision was not contrary to HUD regulations or federal, state, or local law, which is the only permissible and applicable ground upon which the PHA could decide not to be bound by the HO's decision; and (2) the PHA did not adequately state the reasons for its decision.  The Defendants assert that this Court should refrain from granting a preliminary injunction and exercising jurisdiction in the first instance because Rios' exclusive remedy for any challenges to the PHA's decision for due process purposes is an Article 78 proceeding in the state court.

In order to state a valid claim under 42 U.S.C. § 1983, a plaintiff must show that the conduct in question deprived her of a right, privilege, or immunity secured by the Constitution or the laws of the United States, and that the acts were attributable at least in part to a person acting under color of state law.  42 U.S.C. § 1983; Washington v. County of Rockland, 373 F.3d 310, 315 (2d Cir. 2004).  It is well-settled that Section 1983 itself "creates no substantive rights" but rather "provides only a procedure for redress for the deprivation of rights established elsewhere."

Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993) (citing City of Oklahoma City v. Tuttle, 471

U.S. 808, 816, 105 S. Ct. 2427, 2432, 85 L. Ed. 791 (1985)).  Thus, whether brought directly as a

due process violation under the Fourteenth Amendment, or through the statutory vehicle of

Section 1983, the Plaintiff necessarily must establish that the Defendants' conduct deprived her

of her constitutional due process rights.

The Due Process Clause does not protect against all deprivations of constitutionally

protected interests in life, liberty, or property, "only against deprivations without due process of

law." Parratt v. Taylor, 451 U.S. 527, 537, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981) (internal

quotation marks omitted), overruled in part on other grounds by Daniels v. Williams, 474 U.S.

327, 330–31, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986).  Put another way, where a plaintiff alleges

violations of procedural due process "the deprivation by state action of a constitutionally

protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is

unconstitutional is the deprivation of such an interest *without due process of law*".  Zinermon v.

Burch, 494 U.S. 113, 125, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990) (emphasis in original).  To

determine whether the Plaintiff has a valid due process claim, the Court applies a two-step

inquiry: (1) whether the Plaintiff possesses a liberty or property interest and, if so, (2) what

process she is due before she can be deprived of that interest.  See Ciambriello v. Cnty. of

Nassau, 292 F.3d 307, 313 (2d Cir. 2002).

As to the first step of the analysis, the parties do not appear to dispute that the Plaintiff, as

an existing Section 8 housing tenant, has a constitutionally protected interest in the continued

occupancy of her rental unit until the end of her lease term.  See Jeffries v. Georgia Residential

Finance Auth., 678 F.2d 919, 925 (11th Cir. 1982); Ressler v. Pierce, 692 F.2d 1212, 1215 (9th

Cir. 1982) ("In addition, Ressler has a constitutionally protected 'property' interest in Section 8

benefits by virtue of her membership in a class of individuals whom the Section 8 program was intended to benefit."); Guerrero v. City of Kenosha Hous. Auth., No. 10 Civ. 1090, 2012 WL 139390, at *4 (E.D. Wis. Jan. 18, 2012) ("There is also no question that the termination of Guerrero's Section 8 benefits constitutes a deprivation of a constitutionally protected property interest.").  The Defendants have not argued to the contrary, and so, for the purposes of this motion, the Court finds that the Plaintiff has a constitutionally protected property interest in her Section 8 benefits.

Having found a property interest, the Court proceeds to the second inquiry, that is, what process Section 8 recipients are entitled to under the Constitution before those benefits can be terminated.

In evaluating what process satisfies the Due Process Clause, "the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." Hellenic American Neighborhood Action Comm. v. City of New York (" HANAC"),101 F.3d 877, 880 (2d Cir. 1996) (citing Hudson v. Palmer, 468 U.S. 517, 532, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984), and Parratt, 451 U.S. at 541, 101 S. Ct. 1908)); see Rivera-Powell v. New York City Bd. of Elections, 470 F.3d 458, 465 (2d Cir. 2006).  When the government conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides a meaningful post-deprivation remedy.  See Hudson, 468 U.S. at 533, 104 S. Ct. 3194 (explaining that when deprivations are "random and unauthorized . . . predeprivation procedures are simply impracticable since the state cannot know when such deprivations will occur" (internal quotation marks omitted)).  However, "when the deprivation is pursuant to an established state procedure, the state can predict when it will occur and is in the position to provide a pre-deprivation

hearing." <u>Rivera-Powell</u>, 470 F.3d at 465.  In the latter case, "the availability of post-deprivation procedures will not, *ipso facto*, satisfy due process."  <u>HANAC</u>, 101 F.3d at 880.

As the Second Circuit has noted, "[t]he distinction between random and unauthorized conduct and established state procedures . . . is not clear-cut".  <u>Rivera-Powell</u>, 470 F.3d at 465. However, as a general rule, conduct cannot be considered "random and unauthorized", regardless of whether the acts are contrary to state law if:  (1) "the state delegated to those actors 'the power and authority to effect the very deprivation complained of . . . [and] the concomitant duty to initiate the procedural safeguards set up by state law'", <u>id.</u> (quoting <u>Zinermon</u>, 494 U.S. at 138, 110 S. Ct. 975) or (2) the deprivation resulted from "the acts of high-ranking officials who are 'ultimate decision-maker[s]' and have 'final authority over significant matters.'"  <u>Id.</u> (quoting <u>Velez v. Levy</u>, 401 F.3d 75, 91–92 & nn. 14 & 15 (2d Cir. 2005)).

In the present case, if the Court construes the Plaintiff's allegations as concerning the state's established pre-deprivation procedures, namely that she did not receive the process that she was entitled to, then a federal cause of action may lie because the availability of a post-deprivation remedy in the form of an Article 78 proceeding is irrelevant.  <u>See John Gil Const., Inc. v. Riverso</u>, 72 F. Supp. 2d 242, 251 n.13 (S.D.N.Y. 1999) ("In contrast, the instant case does not involve a random and unauthorized act by state employees. Rather, . . . SCA authorities followed statutory and administrative procedures when they suspended JGC.  As a result, adequate post-deprivation remedies do not necessarily satisfy due process and therefore this Court retains subject matter jurisdiction to hear plaintiff's constitutional and federal claims."). On the other hand, if the Plaintiff's allegations are more appropriately interpreted as a random act by a state actor, then the availability of an Article 78 post-deprivation remedy is dispositive. <u>See HANC</u>, 101 F.3d at 880–82 (finding that that district court lacked subject matter jurisdiction

to hear the plaintiff's due process claims based on random and unauthorized acts by state

employees because the plaintiff failed to pursue those claims in an Article 78 proceeding.)

However, as set forth below, it is irrelevant whether the Court finds that the Plaintiff's

claim is properly characterized as alleging that her property right was lost because of a random

and unauthorized act by a government actor or that an established state procedure did not afford

her procedural due process.  If it is the former, then the post-deprivation remedy of an Article 78

proceeding provides Rios with sufficient process and the Court will not exercise jurisdiction over

her claims.  On the other hand, even if it is the latter, the Court could nevertheless deny the

preliminary injunction and dismiss the Plaintiff's claims, if she was afforded all of the pre-

deprivation process she was due under Supreme Court precedent, as well as applicable federal

statutes and regulations.  See Rivera-Powell, 470 F.3d at 468 ("Ultimately, however, the question

of how to classify the Board's action is immaterial, and so we do not decide it.  If we were to

determine that the Board's conduct was random and unauthorized, . . . the existence of a

meaningful post-deprivation remedy (which New York has provided in this case, as we discuss

below) would automatically satisfy procedural due process. . . .  If, on the other hand, we were to

find that the Board's decision was part of an established state procedure, such that the

availability of a post-deprivation remedy would not automatically satisfy due process, we would

merely go on to determine what process was due."); see also Locurto v. Safir, 264 F.3d 154, 172

(2d Cir. 2001) ("We ultimately need not resolve whether defendants' alleged misconduct was

'random and unauthorized,' since even were we to resolve this dispute in plaintiffs' favor, we

would still face the further question of what process is due. . . Because, as discussed below, we

conclude that due process is satisfied so long as the government provides a neutral adjudicator at

the post-termination hearing for a tenured public employee, the question of 'random and unauthorized' conduct becomes moot, and we therefore need not address it.").

    1.  <u>Random and Unauthorized Conduct</u>

In this case, it is reasonable for the Court to construe the Plaintiff's allegations as relating to random and unauthorized conduct by the Defendant Housing Authority, in that the Defendants were constrained to only overturn the HO's determination if it was contrary to law, but instead, according to the Plaintiff, they inappropriately inserted their discretion at a stage in the administrative proceedings where such discretion is unauthorized by the HUD regulations.  In addition, overturning an HO's decision as a general matter, even when perfectly permissible under the HUD regulations, is apparently a rare occurrence.  Moreover, the Plaintiff does not appear to blame the PHA's established procedures for her alleged due process violations.  For example, she does not contend that the PHA should not have had the authority to overturn an HO's decision after a Section 8 recipient has received notice, an opportunity to be heard, and a written decision by the HO.  Rather, her claim boils down to an allegation that the PHA improperly decided that it was not going to be bound by the HO's decision, in disregard of the HUD regulations which provide that the PHA may not be bound only when the HO's decision was contrary to HUD regulations, federal, state or local law.

Therefore, assuming that the alleged deprivation occurred at the hands of a government actor by way of a "random and unauthorized act," no cause of action based upon the Fourteenth Amendment due process clause can stand, so long as there is an adequate post-deprivation procedure available to address the alleged violation.  <u>See HANAC</u>, 101 F.3d at 880–82; <u>see also</u> <u>Zinermon v. Burch</u>, 494 U.S. 113, 132, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990) (explaining that

where the state is effectively "unable to anticipate and prevent a random deprivation of a liberty interest, post deprivation remedies might satisfy due process").

Having received a final determination from the PHA, the Plaintiff may initiate an Article 78 proceeding in New York Supreme Court to challenge the PHA's determination.  See N.Y. C.P.L.R. §§ 7803, 7804; Locurto v. Safir, 264 F.3d 154, 174 (2d Cir. 2001) ("An Article 78 proceeding permits a petitioner to submit affidavits and other written evidence, and where a material issue of fact is raised, have a trial of the disputed issue, including constitutional claims."); Campo v. New York City Employees' Ret. Sys., 843 F.2d 96, 101 (2d Cir. 1988) ("Article 78 'provides the mechanism for challenging a specific decision of a state administrative agency.'") (citation omitted).  The Plaintiff's grievance — that the PHA may have incorrectly determined that the HO's decision was contrary to HUD regulations, or federal, state or local law, necessarily inserting its own discretion at a stage of the process where no discretion is permitted — is precisely the type of error addressed in an Article 78 proceeding.  See Vialis, 783 F. Supp. 109, 114 (S.D.N.Y. 1991) ("It is undisputed that a proceeding under [Article 78] is available to obtain relief in the state courts from an unconstitutional or otherwise unlawful determination of an administrative agency like that alleged of the Housing Authority herein.").

Indeed, Section 7803(3) of New York's Civil Practice Law and Rules provides for judicial review of administrative agency error, including "whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed."  N.Y. Civ. Prac. L. & R. 7803(3) (McKinney 1981 & Supp. 1988).  The "Plaintiff does not allege any facts demonstrating that the available state remedies are in any way inadequate.  Therefore, since New York provides a post-deprivation remedy, and plaintiff does

14

not indicate that [s]he has availed h[er]self of this remedy, [s]he cannot claim that [s]he was deprived of due process." Gabris v. New York City Taxi and Limousine Com'n, No. 05 Civ. 8083, 2005 WL 2560384, at *3 (S.D.N.Y. Oct. 12, 2005) (internal citations omitted); see Terio v. Johann, No. 05 Civ. 5918, 2006 WL 2819659, at *7 (S.D.N.Y. Sept. 29, 2006) ("Plaintiff does not allege that the state procedures in place, if strictly complied with, would be insufficient due process under the Fourteenth Amendment.  Furthermore, state procedures gave Plaintiff an avenue for post-deprivation relief: an Article 78 proceeding in state court challenging the denial of his application.").

As stated in Liotta v. Rent Guidelines Board, 547 F. Supp. 800, 802 (S.D.N.Y. 1982), the Plaintiff "cannot manufacture a § 1983 [or due process] claim by pointing to the allegedly defective [PHA determination] while ignoring that part of the regulatory process that serves to redress administrative error.  Rather, in considering whether [the Defendants] have failed to afford [the Plaintiff] due process in connection with the [Section 8 benefits], the Court evaluates the entire procedure, including the adequacy and availability of remedies under state law."

Moreover, "it is not the proper function of the federal district courts, courts of limited jurisdiction, to review all state judicial or administrative proceedings, even if a plaintiff's federal claims are clothed in constitutional due process language.  Where a plaintiff alleges deprivation of property by state authorities in violation of the Due Process Clause, the federal court's inquiry is limited to determining 'whether the state has provided adequate avenues of redress to review and remedy arbitrary action.'" Menon v. Utica Estates Co., No. 86 Civ. 7613, 1989 U.S. Dist. LEXIS 13126, at *10 (S.D.N.Y. Nov. 2, 1989) (quoting Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 888 (2d Cir. 1987)); see Campo v. New York City Employees' Ret. Sys., 843 F.2d 96 (2d Cir. 1988); Gabris, 2005 WL 2560384, at *3 ("In addition, plaintiff is advised that a due process

15

claim for the deprivation of a property interest is not cognizable in a federal district court if state courts provide a remedy for the deprivation of that property interest.").

In sum, "to the extent that the Housing Law and . . . regulations compel the supervising and other city officials to perform certain acts," such as being bound by a Hearing Officer's decision unless it is contrary to HUD regulations or federal, state, and local law, "Article 78 may thus serve to enforce such requirements when officials fail to fulfill these obligations." Katz v. Klehammer, 902 F.2d 204, 206-07 (2d Cir. 1990).

Therefore, based upon this reasoning, if the Court construes the allegations as random and unauthorized conduct, the Plaintiff's motion for a preliminary injunction will be denied and further, the Court would have no jurisdiction to hear the Plaintiff's due process claims because she failed to pursue those claims in an Article 78 proceeding. See HANC, 101 F.3d 877; Intermor v. Inc. Village of Malverne, No. 03 Civ. 5164, 2007 WL 2288065, at *11 (E.D.N.Y. Aug. 8, 2007) (finding that the plaintiff's claim was not cognizable in federal district court because she had an opportunity to attempt to remedy her alleged injury by initiating an article 78 proceeding in state court); Vialis, 783 F. Supp. 109 (S.D.N.Y. 1991) ("Thus, where a plaintiff alleges deprivation of property in violation of the due process clause, the federal court's initial inquiry must be whether the state has provided adequate remedies to redress such unlawful acts. If so, there will be no claim before the federal court, whether or not the plaintiff took advantage of the state procedure.").

2. The Process Due

As set forth above, even if the Court were to find that the act of the Defendants was not random and unauthorized conduct, but rather taken pursuant to an established policy or procedure, the question remains as to what process was due to the Plaintiff. Locurto, 264 F.3d at

173.  If Rios cannot allege that she has been deprived of certain procedures that she was entitled to, then her federal due process claims necessarily cannot stand.

To satisfy traditional due process requirements, a proceeding for termination of public assistance must meet the following criteria: (1) timely notice stating the reason for the termination, (2) an opportunity to appear at a hearing and to present evidence and question witnesses, (3) the right to representation by counsel at the hearing, (4) the right to have a the decision rest solely on the rules of law and evidence adduced at the hearing, and (5) the right to an impartial decision maker.  Goldberg v. Kelly, 397 U.S. 254, 266-71, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970).  "The Supreme Court reasoned that the interests of the recipient in the uninterrupted provision of benefits and of the State in not wrongly terminating benefits outweighed the State's competing interest in summary adjudication. . . . This reasoning applies with equal force to public housing assistance provided pursuant to Section 8, where eligible participants rely on subsidies to meet their basic need for housing."  Basco v. Machin, 514 F.3d 1177, 1182 n.7 (11th Cir. 2008).

The United States Housing Act essentially parrots Goldberg's criteria, requiring HUD regulations to implement an administrative grievance procedure under which tenants shall:

> (1) be advised of the specific grounds of any proposed adverse public housing agency action;
> (2) have an opportunity for a hearing before an impartial party upon timely request within any period applicable under subsection (l) of this section;
> (3) have an opportunity to examine any documents or records or regulations related to the proposed action;
> (4) be entitled to be represented by another person of their choice at any hearing;
> (5) be entitled to ask questions of witnesses and have others make statements on their behalf; and
> (6) be entitled to receive a written decision by the public housing agency on the proposed action.

17

42 U.S.C § 1437d(k).  In turn, the federal HUD regulations elaborate upon the proper hearing

procedures, in part requiring that "[t]he PHA and the family must be given the opportunity to

present evidence, and may question any witnesses", and that "[t]he person who conducts the

hearing must issue a written decision, stating briefly the reasons for the decision."  24 C.F.R §

982.555(e); see Clark v. Alexander, 85 F.3d 146, 150 (4th Cir. 1996) ("Federal regulations set

out the basic procedural requirements of informal hearings in almost literal compliance with

Goldberg.") (citing 24 C.F.R. § 882.216(b)(6)).  "[T]he nature of the informal hearing is intended

to provide pretermination review of housing authority decisions to terminate housing assistance

benefits".  Id.

> In the context of Section 8 pre-termination hearings, one court has stated:
>
> While the hearing is informal, the governing regulation, 24 C.F.R.
> § 982.555(e)(6), "speaks of a hearing officer making both '[f]actual
> determinations' and a 'decision.'  In particular, it refers to factual determinations
> relating to 'individual circumstances.' " Reading 24 C.F.R. § 982.555(e)(6) and
> § 996.552(c)(2)(i) together, it is clear that, in a case such as this, the decision of a
> hearing officer must, at a minimum, reflect factual determinations relating to the
> individual circumstances of the family (based on a preponderance of the evidence
> at the hearing); demonstrate that he is aware of his discretionary authority under
> 24 C.F.R. § 982.552(c)(2)(i), to take all relevant circumstances (including
> mitigated circumstances) into account; and indicate whether he either did or did
> not choose to exercise that discretion in favor of mitigating the penalty (here
> termination of Section 8 benefits) in a particular case.

Carter v. Lynn Hous. Auth., 450 Mass. 626, 880 N.E.2d 778, 785-86 (Mass. 2008) (citations and

internal footnotes omitted).

The Plaintiff does not assert any defects in the regulatory requirements described above

in Carter, and does not claim that she was provided with inadequate notice or did not have an

opportunity to be heard before an impartial decision maker.  In fact, the Plaintiff has no

complaints whatsoever about the *process* that was afforded by the government agency, whether

at the HO or the PHA level.  At the preliminary injunction hearing before this Court, the

Plaintiff's counsel could not articulate precisely how the PHA's established procedures violate due process.  See Caswell v. City of Detroit Hous. Com'n, 418 F.3d 615, 621 (6th Cir. 2005) ("To be sure, he is unable to point to what additional procedural safeguards should have been provided to better protect his property interest. . . . Instead of pointing to a procedural flaw in his hearing, Caswell claims that he was improperly denied his property interest, despite the fact that he received process.").

Although the Plaintiff alleges in her papers and her counsel has argued before this Court that the PHA did not adequately provide reasons for not being bound by the HO's decision, (see 24 C.F.R. 982.555(f)(3) ("If the PHA determines that it is not bound by a hearing decision, the PHA must promptly notify the family of the determination, and of the reasons for the determination")), it seems apparent to the Court that the PHA did in fact set forth its reasons in the February 23, 2012 notice.  Rather, the Plaintiff apparently takes issue with the soundness of those reasons and whether they comply with the federal regulations; namely, that the HO's decision was contrary to HUD regulations or federal, state, or local law.  While the Plaintiff cites Boykins v. Cmty. Dev. Corp. of Long Island, No. 10 Civ. 3788, 2011 WL 1059183 (E.D.N.Y. March 21, 2011) for the ruling that a Section 8 housing decision was vague and hence potentially constituted a due process violation, that opinion concerned the sufficiency of the hearing officer's decision, which necessarily involves factual determinations relating to the individual circumstances of the family based on a preponderance of the evidence presented at the hearing. Thus, the ruling in Boykins is readily distinguishable on this ground.  See 24 C.F.R § 982.555(e) (6) ("*The person who conducts the hearing* must issue a written decision, stating briefly the reasons for the decision.") (emphasis added).

While an argument may be made that the  overturning of the HO's decision by the PHA without adequate justification and not in accordance with the HUD federal regulations had the practical effect of rendering the hearing illusory, so that due process was violated, (<u>see</u> Pl. Mem. at 6 ("her right to remain on the Section 8 Program was taken away after a successful outcome, in the same way as if she had been denied any hearing at all")), the Court is not convinced by this logic.  The court finds that the requirements under <u>Goldberg</u> and federal law were satisfied, so that the Plaintiff received all of the pre-deprivation process she was due.  Moreover, upon a review of the United States Housing laws and the implementing federal regulations, the Plaintiff or her attorney should have been aware that the HO's decision was in essence advisory, in that the PHA was the ultimate decision-maker with authority to overturn the HO's determination if it was contrary to HUD regulations, federal, state, or local law.  <u>See Tinnin</u>, 706 F. Supp. 2d at 406 ("the administrative scheme . . .  contemplates PHAs ignoring ultra vires decisions, rather than sending them back to Administrative Law Judges (ALJs) for reformulation."); <u>see also</u> <u>Lawrence v. Town of Brookhaven Dep't of Hous., Comm. Dev. & Intergovernmental Affairs</u>, No. 07 Civ. 2243,  2007 WL 4591845, at *25 (E.D.N.Y. Dec. 26, 2007) (finding that an informal hearing as to Section 8 benefits is not a "final" decision for *res judicata* purposes because the "Plaintiff has presented no case law regarding the finality of decisions made in a setting such as this, nor has she identified any Town regulation or authority that would compel such a finding.").

Furthermore, although the Plaintiff does not make this claim and in fact at oral argument expressly disavowed that she was requesting it, it may seem antithetical to principles of due process to preclude the Plaintiff from having a second opportunity to be heard at the next stage of the decision-making process at the PHA level.  However, the procedures are set up in such a way that one opportunity to be heard is sufficient, because, as the Plaintiff has acknowledged, the

PHA's authority to overturn the HO's decision is narrowly drawn and, it appears to the Court

that an Article 78 proceeding provides adequate post-deprivation process.  As one Massachusetts

state court explained,

> There is no due process provided by the subsequent consideration by the PHA whether to disregard the hearing officer decision.  The family has no right or even opportunity under the regulations to present its facts and arguments afresh at the PHA level, once the hearing officer has rendered a decision.  For due process to mean anything here the *hearing officer* must be able to make a decision on the discretionary issue, based upon the evidence and arguments presented to him. . . .
>
> The only sensible interpretation of this regulatory framework is to recognize that the concept of an "error of law" in the context of a review by the PHA of a hearing officer decision must mean the traditional function performed by the review of a trial-type hearing and decision: Were the findings of fact supported by the evidence?  Was proper procedure followed? Were proper legal principles applied?  And, did the decision maker abuse his discretion where issues of judgment and discretion were before him?

Wojcik, 66 Mass. App. Ct. at 113, 114 (emphasis added).

Finally, in the Complaint, the Plaintiff brings a due process claim based upon the policy

of the Defendants to not provide any record of the administrative hearing and to refuse to

proceed with the administrative hearing if a participant or his counsel provides the means to

record the testimony at such an administrative hearing.  However, district courts in this circuit as

well as outside of this circuit have previously held that termination of housing benefits does not

violate due process when the informal hearing is not recorded.  See Montgomery v. Hous. Auth.

Of Baltimore City, 731 F. Supp. 2d 439, 442 (D. Md. 2010) ("the Court has found no authority

that the Due Process Clause requires a recorded hearing for a potential appeal"); Carter v.

Belmont Shelter Corp., No. 03 Civ. 62, 2005 WL 578165, at *6 (W.D.N.Y. March 9, 2005)

("Further, this Court finds that the fact that the informal hearing was not tape recorded, and that

Plaintiff was not permitted to examine her tenant file, does not render the hearing

constitutionally deficient.").

Therefore, after this review of the facts and the law, the Court does not find that there is a likelihood of success on the merits as to whether the Plaintiff has stated a valid due process claim under the Fourteenth Amendment.  For this reason, the Plaintiff's motion for a preliminary injunction is denied.  The Second Circuit has endorsed the view that "[w]hen the minimal due process requirements of notice and hearing have been met, a claim that an agency's policies or regulations have not been adhered to does not sustain an action for redress of procedural due process violations." McDarby, 907 F.2d at 1337-38 (internal citations omitted).  Accordingly, "the enforcement of state regulations . . . is to be done through the state court system and not in an action under 42 U.S.C [1983 or the Fourteenth Amendment], where no federal constitutional guarantees have been violated." Id. at 1338.

## D. As to the Plaintiff's Section 1983 Claim Based Upon Violation of Federal Law

The Plaintiff also brings her Section 1983 cause of action based in part upon violations of the United States Housing Act, 42 U.S.C § 1437d(k).  The Plaintiff argues, regardless of how the Court rules in connection with her Section 1983 due process claims, she can nevertheless maintain a Section 1983 claim in this Court based upon a violation of this federal law.

It is true that a Section 1983 claim is not foreclosed by the existence of a state remedy, *i.e.*, Article 78, if it alleges the violation of a right secured by a federal statute rather than by the due process clause.  See Vialez, 783 F. Supp. at 124 (finding jurisdiction was supported by a Section 1983 claim alleging violations of the Brooke Amendment, 42 U.S.C. § 1437a, because "[t]he federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked").

However, for the same reasons set forth above, the Court finds that there is no likelihood of success on the merits as to whether the Plaintiff has stated a claim for violation of the United

States Housing Act, 42 U.S.C § 1437d(k).  As previously stated, that statutory provision states that:

> The Secretary [of HUD] shall by regulation require each [PHA] receiving assistance under this chapter to establish and implement an administrative grievance procedure under which tenants will—
> (1) be advised of the specific grounds of any proposed adverse public housing agency action;
> (2) have an opportunity for a hearing before an impartial party upon timely request . . .
> (3) have an opportunity to examine any documents or records or regulations related to the proposed action;
> (4) be entitled to be represented by another person of their choice at any hearing;
> (5) be entitled to ask questions of witnesses and have others make statements on their behalf; and
> (6) be entitled to receive a written decision by the public housing agency on the proposed action.

42 U.S.C. § 1437d(k).  In the present case, none of the Plaintiff's allegations sufficiently assert a violation of any of these requirements.  In particular, the Plaintiff does not allege that she received inadequate notice; nor does she allege that she did not receive an opportunity to be heard, to examine documents, to be represented by an attorney, or to cross examine witnesses.  Although the Plaintiff does assert that the written decision by the PHA was inadequate, the statute only requires that a written decision be received and does not detail what substance it need contain.  In any event, the Court has previously found that the PHA's notice did adequately state its reasons for its determination, although the reasons may be improper and not in accordance with HUD regulations.

Therefore, contrary to the Plaintiff's contentions, the Court does not find that her claim premised on violations of 42 U.S.C. § 1437d(k) would afford her a likelihood of success on the merits.

On a final note, the Court is not expressing any opinion regarding the soundness of the PHA's decision.  In fact, the Court remains somewhat skeptical about the reasons stated by the

PHA in their determination reversing their HO's decision.  The HO, after considering all of the evidence, utilized his authorized discretion in finding that the Plaintiff had been punished enough and that she and her three small children should not be rendered homeless because of her first criminal infraction, especially one that was explained to be the result of self-defense.  In particular, the articulated reason that the HO referenced the wrong regulation in his written decision appears troublesome.  See Loving v. Brainerd Housing and Redevelopment Auth., No. 08 Civ. 1349, 2009 WL 294289, at *8 (D. Minn. Feb. 5, 2009) ("As to BHRA's alleged failure to cite the relevant rule, however . . .  Plaintiffs acknowledge that their own lawyers cited to the relevant rule at their hearings. . . . For plaintiffs to win in those circumstances, they would have to demonstrate that constitutional due process inflexibly requires the defendant to state the applicable rule, regardless of whether the parties jointly understand what rule is at issue, or whether the rule is mentioned by another party.  Such rigidity would be inconsistent with Goldberg v. Kelly's general approval of flexible, informal hearing procedures."); Tinnin, 706 F. Supp. 2d at 406 ("Plaintiff points to three alleged errors that she claims justify remand.  First, Hearing Officer Barnes 'meant to refer to 24 C.F.R. § 982.552 when she in fact referred to 24 C.F.R. § 551.' . . . While the Court agrees with the premise, the error does not justify a remand because it is inconceivable that, but for this mistake, Hearing Officer Barnes would have found termination inappropriate, particularly given her unequivocal finding that termination was appropriate because of Plaintiff's drug-related conviction.").

Despite these concerns, it is not the Court's role in the present context to assess the validity of the PHA's reasoning and ruling.  That is a determination that is initially more properly left to the New York State court in an Article 78 proceeding.

### III.  CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED**, that the Plaintiff's motion for a preliminary injunction is denied; and it is further

**ORDERED**, that that the provisions of the temporary restraining order are terminated as of April 17, 2012, at which time the parties are directed to appear for the previously scheduled conference before this Court at 9:30am.


**SO ORDERED.**
Dated: Central Islip, New York
April 10, 2012


_____/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge